UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| TERRI L. ROSANE, | ) | CIV. 11-5020 |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | **GRANTING** |
| vs. | ) | **PLAINTIFFS' MOTION** |
| | ) | **TO COMPEL** |
| SHANNON COUNTY SCHOOL | ) | [DOCKET NO. 24] |
| DISTRICT 65-1, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is pending before the court on plaintiff Terri L. Rosane's complaint alleging under Title VII, 42 U.S.C. §§ 2000e et seq., that she was discriminated and retaliated against on the basis of her race by her former employer, defendant Shannon County School District 65-1 ("District"). See Docket 1. Ms. Rosane has filed a motion seeking the court's order compelling the District to provide documents responsive to certain requests for the production of documents which Ms. Rosane served on the District in July, 2011. See Docket No. 24. The district court, the Honorable Jeffrey L. Viken, referred Ms. Rosane's motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts which are pertinent to the pending motion are as follows. Ms. Rosane was employed by District as a cook at its school at Batesland,

South Dakota, beginning in October, 2007. During her employment with the District, she alleges that she was the only white employee working in the Batesland school kitchen. She alleges that both co-workers and supervisors subjected her to a hostile environment based on racial harassment. After complaining about that harassment, Ms. Rosane alleges that the District retaliated against her for making that complaint. Ms. Rosane filed a charge of discrimination and, after receiving a right to sue letter from the Equal Employment Opportunity Commission, she brought this action in federal court.

In July, 2011, Ms. Rosane served the District with discovery requests that included a request for the personnel files of Pete Plenty Wounds, a co-worker; Bertha Conroy, who Ms. Rosane alleges was her supervisor but who the District asserts was a mere co-worker; Carol Reitz, supervisor of the food service employees; Terry Albers, the Human Resources Director who conducted an investigation of Ms. Rosane's complaint; Connie Kaltenbach, the principal at the Batesland School; and Dan Elwood, superintendent of the District who is alleged to have participated in the investigation of Ms. Rosane's complaint.

Ms. Rosane's original discovery request sought the entire contents of each requested personnel file. However, in subsequent communications with District's counsel in May, 2012, Ms. Rosane's counsel limited her request to evaluations from the personnel files and any type of personnel actions taken as documented in the files. See Docket No. 26-3. Ms. Rosane has specified that

2

she does not seek any information such as telephone numbers, social security numbers, income information, medical information, criminal record, or any other sensitive information that is not related to Ms. Rosane's claims. See Docket No. 25.

District has refused to produce any of the personnel files requested, asserting that the discovery is irrelevant, that it implicates the privacy interests of the employees whose files are being requested, and that it may cause "economic or emotional harm." District seeks to submit all the files requested to the court for *in camera* review prior to producing any documents to Ms. Rosane. District also seeks a protective order, though it has not specified what terms or documents it wishes that order to encompass.

## DISCUSSION

### A.     Meet and Confer Requirement

Both the Federal Rules of Civil Procedure and this district's local rules of procedure require that parties meet and confer in an attempt to resolve discovery disputes before filing discovery motions. See Fed. R. Civ. P. 37(a)(1); DSD LR 37.1. The Federal Rule states that the movant must have "conferred or attempted to confer" in good faith "with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See Fed. R. Civ. P. 37(a)(1). This district's local rule states that "[a] party filing a motion concerning a discovery dispute shall file a separate certification describing the

good faith efforts of the parties to resolve the dispute." See DSD L.R. 37.1. A certification must be part of any discovery motion and the certification must show that a good-faith effort was made to resolve disputes before filing the motion. Id.

Ms. Rosane's counsel certified via affidavit filed with her original brief in support of her motion that her co-counsel had contacted District's counsel by e-mail, requesting District to reconsider its refusal to produce the personnel files and clarifying that Ms. Rosane sought only documents from the personnel files relating to evaluations and any type of personnel actions taken. This e-mail was sent approximately 10 months after the discovery requests were served on District. District never responded to the e-mail from Ms. Rosane's counsel. The instant motion to compel was filed 10 days after Ms. Rosane's counsel sent the e-mail.

Ms. Rosane has complied with the directive of both Federal Rule of Civil Procedure 37 and Local Rule 37.1. Accordingly, the court will address the merits of Ms. Rosane's motion.

## B. Scope of Discovery in a Civil Case

The scope of discovery is governed by Fed. R. Civ. P. 26. The scope described by that rule is as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody,

condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

This scope of discovery under subsection (b)(1) is limited by subsection (b)(2)(C). That subsection provides that:

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

See Fed. R. Civ. P. 26(b)(2)(C).

A party may move for a protective order from discovery upon a demonstration of good cause in order to protect themselves from annoyance, embarrassment, oppression, or undue burden or expense. See Fed. R. Civ. P. 26(c)(1). If a motion for protective order is denied, the court may order that the

party provide or permit discovery. Id. at (c)(2). The court may award attorneys fees and expenses in connection with a motion for protective order. Id. at (c)(3); Fed. R. Civ. P. 37(a)(5).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007 (3d ed. 2010) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 120 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. Id. at 120; see also Fed. R. Civ. P. 26(b), 32, and 33. Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant

to the subject matter of the action. The good-cause standard
warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the
actual claims and defenses involved in the action. The dividing
line between information relevant to the claims and defenses and
that relevant only to the subject matter of the action cannot be
defined with precision. A variety of types of information not
directly pertinent to the incident in suit could be relevant to the
claims or defenses raised in a given action. For example, other
incidents of the same type, or involving the same product, could be
properly discoverable under the revised standard. . . . In each
case, the determination whether such information is discoverable
because it is relevant to the claims or defenses depends on the
circumstances of the pending action.

The rule change signals to the court that it has the authority to
confine discovery to the claims and defenses asserted in the
pleadings, and signals to the parties that they have no entitlement
to discovery to develop new claims or defenses that are not already
identified in the pleadings. . . . When judicial intervention is
invoked, the actual scope of discovery should be determined
according to the reasonable needs of the action. The court may
permit broader discovery in a particular case depending on the
circumstances of the case, the nature of the claims and defenses,
and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World

7

Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must

8

make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Ms. Rosane's claims in this lawsuit are hostile environment racial harassment, perpetrated by both co-workers and supervisors, and retaliation. To prove a hostile environment claim involving co-workers, Ms. Rosane must show that she was a member of a protected class, that she was subject to unwelcome harassment, that the harassment resulted from her membership in the protected class, that the harassment was severe enough to affect the terms, conditions, or privileges of her employment, and that the employer knew or should have known of the harassment and failed to take remedial action. Ryan v. Capital Contractors, Inc., 679 F.3d 772, 778 (8th Cir. 2012); Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 966 (8th Cir. 1999). When the harassing party is the plaintiff's supervisor, the plaintiff need not show that the employer knew or should have known of the discrimination before the employer may be held liable. Ryan, 679 F.3d at 778-79; Scusa, 181 F.3d at 966.[1]

---

[1] A supervisor, for purposes of determining if an employer should be held vicariously liable for a hostile work environment, is a person with "the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." Weyers v. Lear Operations Corp., 359 F.3d 1049, 1057 (8th Cir. 2004) (quoting Jones v. John Morrell & Co., 354 F.3d 938, 940 (8th Cir. 2004)).

In order to show a *prima facie* case of retaliation, Ms. Rosane must show that she engaged in statutorily protected activity, that she suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity.  Logan v. Liberty Heathcare Corp., 416 F.3d 877, 880 (8th Cir. 2005).

Ms. Rosane has included a request for punitive damages on her federal employment law claims.  "Punitive damages may be awarded for an intentional Title VII violation if the employer acted 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.' 42 U.S.C. § 1981a(b)(1).  The requisite showing of malice or reckless indifference requires proof that the employer 'at least discriminate[d] in the face of a perceived risk that its action will violate federal law.' "  Sturgill v. United Parcel Service, Inc., 512 F.3d 1024, 1035 (8th Cir. 2008) (quoting Kolstad v. American Dental Ass'n., 527 U.S. 526, 536 (1999)).

**C.  Ms. Rosane's Requests for Personnel Files**

**1.  Relevancy**

Because Ms. Rosane has voluntarily limited the scope of the discovery she is requesting, the court addresses that more limited request rather than the broad request originally made.  Ms. Rosane's request, as modified, is for documents from the personnel files reflecting performance evaluations and personnel actions taken that are relevant to her claims.

Ms. Rosane argues that the personnel files will show whether District knew or had reason to know that she might be subject to a hostile work environment as a result of the actions or comments of the persons she came into contact with on the job. This would be true if the personnel files documented prior similar episodes, comments or actions of the persons involved in Ms. Rosane's case. This would be relevant to the knew-or-should-have-known standard applicable to Ms. Rosane's *prima facie* case of hostile environment.

Although the principal and the superintendent are not alleged to have been direct participants in the hostile environment complained of by Ms. Rosane, how they responded to Ms. Rosane's complaint may make it more or less likely that a hostile environment existed, or was countenanced, or that retaliation occurred. Furthermore, the responses of these two persons to Ms. Rosane's complaint may bear on her request for punitive damages by showing whether discrimination occurred in the face of a perceived risk that federal law was being violated by the District.

Thus, Ms. Rosane has made her initial showing of the relevance of the discovery she requests. See St. Paul Reinsurance Co., 198 F.R.D. at 511. The burden then shifts to District to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive." Id. at 512.

11

District has not done so. Although irrelevancy was one of the grounds stated by District when it initially refused to produce the personnel files to Ms. Rosane, it barely addresses this issue in its brief. District argues that Ms. Rosane had an opportunity to take the depositions of employees of District, including Elwood and Kaltenbach, and that she should have inquired into these matters when those depositions were taken. This argument by District does not demonstrate the irrelevancy of the documents requested. Information may be obtained in any number of ways under the Federal Rules of Civil Procedure. Pursuing one way does not preclude exploring other ways as well.

2. **Protective Order**

District also objects to the discovery on grounds of privacy. In particular, it asserts that chapter 1-27 of the South Dakota Codified Laws prohibits the discovery of the personnel files requested by Ms. Rosane in this case. However, SDCL ch. 1-27 is a state-law corollary to the federal Freedom of Information Act ("FOIA"). Chapter 1-27 outlines what information and documents are available to any member of the public from any South Dakota governmental agency or entity. SDCL ch. 1-27 does not purport to describe or prohibit the discovery that may take place between specified parties in civil litigation with an interest in the subject matter of the documents requested. FOIA, and enactments similar to FOIA, were "not intended to supplement or

displace the rules of discovery." John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989).

As one court explained, "[i]f information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged within the meaning of [Fed. R. Civ. Pro.] rule 26(b)(1) and thus not discoverable in civil litigation. . . . Though information available under the FOIA is likely to be available through discovery, information unavailable under the FOIA is not necessarily unavailable through discovery." Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984). See also Kamakana v. City and County of Hololulu, 447 F.3d 1172, 1185 (9th Cir. 2006) (documents exempt from disclosure under FOIA are not automatically privileged from civil discovery); Culinary Foods, Inc. v. Raychem Corp., 150 F.R.D. 122, 125 (N.D. Ill. 1993) (same); Pleasant Hill Bank v. United States, 58 F.R.D. 97, 99 (W.D. Mo. 1973) (same).

A party resisting discovery on the grounds of privilege cannot establish that privilege solely by relying on a FOIA exemption. Culinary Foods, Inc., 150 F.R.D. at 125. Instead, under the Federal Rules of Civil Procedure, a party resisting discovery on the basis of an assertion of a privilege must: (1) expressly make the claim; and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a

13

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See Fed. R. Civ. P. 26(b)(5)(A).

Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party. General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973). The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (additional citation and quotation marks omitted). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (additional citations and quotation marks omitted). The court must also consider "the relative hardship to the non-moving party should the protective order be granted." General Dynamics Corp., 481 F.2d at 1212 (additional citation omitted).

In Pansy, The Third Circuit set forth a thoughtful analysis of the good-cause standard that this court finds instructive. Although Pansy dealt specifically with the issue of whether the trial court abused its discretion in first granting and then subsequently refusing to modify a confidentiality order over a settlement agreement, confidentiality orders over matters concerning

14

stages of litigation and protective orders over discovery are "functionally similar, and require similar balancing between public and private concerns." Pansy, 23 F.3d at 786.

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process.... [T]he court...must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7).... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

Id. at 787 (additional citations omitted).

The balancing test requires courts to consider a variety of factors to determine if a protective order is appropriate. Id. at 789. These factors, discussed below, "are unavoidably vague and are of course not exhaustive" so as to provide courts with "the flexibility needed to justly and properly" resolve discovery disputes. Id.

> One interest which should be recognized in the balancing process is an interest in privacy. It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such

protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.

While preventing embarrassment may be a factor satisfying the "good cause" standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.

Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information among litigants would promote fairness and efficiency.

A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public.... [I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

Id. at 787-88 (internal quotation marks, footnotes, and citations omitted).

When dealing with sensitive or proprietary information, courts routinely grant protective orders that limit who may access the disclosed information and how the disclosed information may be used. Id. at 787 (additional citation omitted). Rule 26(c) confers " 'broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.' " Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter

No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)). In this case, District, as the party seeking the protective order, has the burden "to show the necessity of its issuance." See General Dynamics Corp., 481 F.2d at 1212.

District has not established good cause for the issuance of a protective order. It's objections are stereotypical and conclusory–asserting "privacy" and "economic or emotional harm" without specifying what these specific interests are, and how they will be injured by disclosure.

District has offered to simply turn over all the files to the court for *in camera* inspection, but this does not satisfy District's burden of establishing a privilege either. It simply shifts the work of identifying documents and articulating the grounds for potential privilege to the court. The burden does not rest on the court, but rather on District. In addition, this court is not as familiar with the facts of this case as the parties are, and the court's judgment as to the relevancy or need for various documents in these personnel files is a poor substitute for the evaluation the parties would make themselves.

District does suggest a protective order, but the protective order suggested by District is a blanket protective order that would prevent Ms. Rosane from access to all of the documents in all the personnel files requested. The court has already determined that such an order is not called for here since the limited documents requested from the personnel files are

relevant–they have the tendency to make more or less likely a fact in issue. The burden is on District to show why the documents requested need protection and to articulate the type of protection needed. Again, District has not satisfied its burden. Accordingly, the court will order District to produce the documents, as limited by Ms. Rosane's counsel. The court will order that the documents produced by District to Ms. Rosane be redacted to remove personal identifiers such as addresses, telephone numbers, social security numbers, dates of birth, and any financial account numbers. Reference may be made to Fed. R. Civ. P. 5.2 for a list of information considered sensitive and which may be redacted.

**D.     Ms. Rosane's Request for Sanctions**

If the court grants a motion for a protective order, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including the attorney's fees." See Fed. R. Civ. P. 37(a)(5)(A). However, the court must not make such an award if the "opposing party's nondisclosure, response, or objection was substantially justified." See Fed. R. Civ. P. 37(a)(5)(A)(ii).

Here, the discovery requests served by Ms. Rosane were outstanding for the better part of 10 months. However, during most of that period, the request being propounded was for ***all*** documents in the personnel files. Personnel files

typically contain documents such as health care documents, life insurance, wages or salary, W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic deposits, and counseling information regarding employee assistance programs. None of these documents would have been relevant to this case. The District was justified in resisting discovery of these documents. However, it should have produced the documents which were relevant, namely evaluations and personnel actions. Ms. Rosane limited her request to these documents only after her request had been pending for 10 months and only 10 days prior to filing the instant action.

On this record, both parties share the blame for not moving this discovery issue forward. Although it is difficult for the court to conclude that District's position was substantially justified, the court concludes that attorneys fees should not be awarded.

## CONCLUSION

Based on the foregoing discussion, the court hereby

ORDERS that Ms. Rosane's motion to compel [Docket No. 24] is granted, as limited by her counsel. Within 14 days of the date of this order, District shall produce to Ms. Rosane documentation of evaluations and any personnel action taken from the requested personnel files with regard to any of the persons whose personnel files have been requested. District shall redact from

the documents produced any personal identifiers as previously discussed in the body of this opinion.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated August 21, 2012.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE