UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| TERRI L. ROSANE, | ) | CIV. 11-5020-JLV |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| SHANNON COUNTY SCHOOL DISTRICT 65-1, | ) ) | |
| | ) | |
| Defendant. | ) | |

Pending before the court is defendant Shannon County School District 65-1's ("District") motion for summary judgment. (Docket 56). The court referred the motion to Magistrate Judge Veronica L. Duffy for resolution. (Docket 65). On March 5, 2013, Magistrate Judge Duffy filed a report recommending the court grant in part and deny in part defendant's motion for summary judgment. (Docket 69). Magistrate Judge Duffy recommended granting defendant summary judgment on plaintiff's hostile work environment claim, denying defendant summary judgment on plaintiff's retaliation claim, and denying defendant summary judgment on its claim of sovereign immunity. Id. Defendant timely filed objections. (Docket 70). Plaintiff filed a response to defendants' objections.[1] (Docket 71).

---

[1] Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the reasons stated below, defendant's objections are overruled.  The court adopts the report and recommendation of the magistrate judge in its entirety.

**A.    DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

District asserts the magistrate judge erred in denying it summary judgment on plaintiff's retaliation claim and in denying relief to District under the affirmative defense of statutory sovereign immunity.  Neither plaintiff nor defendant object to the portion of the magistrate judge's recommendation granting defendant summary judgment on plaintiff's hostile work environment claim.

**1.    Retaliation Claim**

Title VII declares "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).

"To defeat summary judgment on a retaliation claim, a plaintiff must produce either direct evidence of retaliation or create an inference of retaliation under the McDonnell Douglas[2] burden-shifting framework." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1020 (8th Cir. 2011) (citing Young–Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted). Ms. Rosane does not assert direct evidence of retaliation. Under the McDonnell burden-shifting framework, the issue is whether Ms. Rosane has presented "an inference of retaliation." Pye, 641 F.3d at 1020.

In Title VII cases, the burden-shifting framework consists of three steps. Id. at 1021. First, the plaintiff must establish a *prima facie* case for her claim. Id. Second, the defendant has the opportunity to offer a non-retaliatory reason for its action. Id. Third, the plaintiff has the opportunity to prove the defendant's stated non-retaliatory reason was merely pretext. Id.

To establish a *prima facie* case of retaliation, the plaintiff must show (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between the adverse employment action and the protected conduct. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1051 (8th Cir. 2002).

In analyzing plaintiff's claim and viewing the facts, and inferences from those facts, in the light most favorable to the nonmoving party, the magistrate

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

judge concluded (1) Ms. Rosane engaged in a protected activity "by filing her internal grievance and by filing her charge of discrimination with the SDDHR"; (2) Ms. Rosane suffered an adverse employment action whether she felt forced to resign or was terminated; and (3) a genuine issue of material fact existed as to the cause of Ms. Rosane's termination. (Docket 69 at pp. 34-40). The magistrate judge recommended denying summary judgment because a genuine issue of material fact existed concerning the District's motives in terminating Ms. Rosane. Id. at pp. 39-41.

District objects to the entirety of the magistrate judge's analysis relating to plaintiff's retaliation claim. Specifically, defendant argues the magistrate judge erred in finding that: (1) plaintiff exhausted her administrative remedies; (2) plaintiff engaged in a protected activity; (3) plaintiff suffered an adverse employment action; (4) a genuine issue of material fact existed regarding defendant's motives for terminating the plaintiff; and (5) a genuine issue of material fact existed regarding pretext. (Docket 70). District also objects to the magistrate judge's decision not to consider the final stage of the McDonnell Douglas analysis. Id. Each of these objections will be discussed separately.

### a. Whether plaintiff exhausted her administrative remedies related to her retaliation claim

Prior to filing a federal lawsuit, a Title VII claimant must exhaust administrative remedies. 42 U.S.C. § 2000e-5(b)-(c). The claimant must first file a charge of discrimination with the Equal Employment Opportunity

4

Commission ("EEOC") or with the state's Division of Human Rights.  Id.  In this case, plaintiff filed a charge with the South Dakota Division of Human Rights ("SDDHR").  Once the claim is filed, SDDHR investigates the charge and issues a determination of probable cause.  Id.  A finding of no probable cause is considered a final agency action for purposes of appeal.  SDCL § 20-13-28.1.  If SDDHR makes a finding of no probable cause, the claimant can choose to appeal under the South Dakota Administrative Procedures Act or can appeal the SDDHR decision to the EEOC.  42 U.S.C. § 2000e-5(c)-(e), SDCL § 1-26-30.  If the party chooses to file a complaint in federal court, the party must first obtain a right-to-sue letter from the EEOC.  Id. at § 2000e-5(f)(1).

"The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation."  Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005).  "The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." Id. (citing Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996)). Federal courts will "liberally construe an administrative charge for exhaustion of remedies purposes." Id.  However, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which

simply was not made." Id. (citation omitted). "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." Id.

On October 14, 2009, plaintiff filed her charge of discrimination with the SDDHR, checking the boxes for discrimination based on race and retaliation. (Docket 56-24). Plaintiff's allegation of retaliation stemmed from the District's proposed involuntary transfer to Wolf Creek. Id. SDDHR issued a determination of no probable cause and dismissed the charge on February 11, 2010. (Docket 56-25). Plaintiff then appealed to the EEOC. On December 7, 2010, the EEOC adopted the findings of SDDHR and issued the plaintiff a notice of right-to-sue. (Docket 56-26). Plaintiff received the right-to-sue letter on December 10, 2010, and thereafter filed this lawsuit on March 9, 2011. (Docket 1).

In this case, District argues plaintiff failed to exhaust her administrative remedies related to her retaliation claim because her original charge contemplated the involuntary transfer rather than termination of employment. The plaintiff's administrative charge states, in part, "Terry Albers, from Human Resources required me to learn Lakota . . . . After I filed a grievance with the School Board stating I was being discriminated against because of my race, I was notified I would be transferred to the Wolf Creek School . . . I believe the

6

transfer to Wolf Creek is in retaliation for my discrimination complaint." (Docket 56-24).  Plaintiff's federal complaint contends District retaliated against her "by telling her to learn the Lakota language, threatening to transfer her to another school, failing to investigate the complaints of Plaintiff, and otherwise creating an intolerable working environment such that she was forced to resign."  (Docket 1 at p. 5).  The magistrate judge properly noted the issues as "whether Ms. Rosane's allegedly retaliatory termination is 'like or reasonably related' to the retaliation claim regarding the proposed involuntary transfer listed in her administrative charge."  (Docket 69 at p. 16).

The magistrate judge analyzed two decisions from the United States Court of Appeals for the Eighth Circuit discussing the requirement that federal claims be "like or reasonably related" to the claims brought in the administrative proceedings.  (Docket 69 at pp. 16-19) (citing Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852 (8th Cir. 2012) and Wedow v. City of Kansas City, Mo., 442 F.3d 661, 673 (8th Cir. 2006).

In Richter, a claimant filed an administrative charge alleging sex and race discrimination but did not check the box for retaliation.  Richter, 686 F.3d at 849.  After receiving her right-to-sue letter, the claimant brought a federal action alleging she was terminated in retaliation for filing the administrative charge.  Id.  The Eighth Circuit held that the termination constituted a separate actionable employment practice which was not "like or reasonably related" to the administrative charge.  Id.  The court noted the EEOC never had

7

the opportunity to investigate or initiate a conciliation process on the retaliation claim. Id. at 853.

In Wedow, two female firefighters filed charges with the EEOC in 1997 alleging ongoing sex discrimination. 442 F.3d at 667. Each charge also alleged ongoing and continuing retaliatory denial of career-enhancing opportunities. Id. at 674. The lawsuit that followed the 1997 charges alleged discriminatory treatment and retaliation through 2000, including denial of career-enhancing opportunities, in violation of Title VII. Id. at 667-68. The plaintiffs were successful at trial. Id. at 667. The defendant appealed the jury verdict arguing it was entitled to judgment as a matter of law on the post-1997 retaliation claims that were not asserted in the 1997 EEOC charges because the plaintiffs did not administratively exhaust those claims. Id. at 672. The Eighth Circuit upheld the jury verdicts reasoning those claims were not precluded because they were like or related to the underlying EEOC charges that alleged ongoing and continuing retaliation. Id. at 672-75. The Eighth Circuit explained:

> [A] reasonable EEOC investigation of alleged 'ongoing and continu[ing]' retaliation in this case would certainly have focused on whether or not the retaliation alleged was in fact existent at the time of the filing of the charges and if it did indeed continue to exist at the time of the investigation. Unlike allegations of a discrete act of discrimination that occurred in the past and outside of the limitations period or that occurred subsequently but were unrelated to the scope of the EEOC charges, the allegations in the November 1997 EEOC charges filed in this case spoke of acts occurring in the present and specifically alleged future implications as well.

Id. at 674.

The magistrate judge found this case more closely resembled Wedow than Richter and concluded plaintiff's "termination, whether it consisted of resignation or dismissal, is of a 'like kind' to a proposed involuntary transfer . . . ." and therefore "[r]equiring Ms. Rosane to file another administrative change subsequent to her termination would create 'needless procedural barriers." (Docket 69 at p. 18) (citing Wedow, 442 F.3d at 674). This court agrees. Plaintiff's administrative claim alleged discrimination based on race and retaliation. Although the plaintiff's original retaliation claim had to do with the involuntary transfer, it would have been impossible for plaintiff to predict any future retaliation based on the filing of the complaint itself. See Foster v. Roberts Dairy Co., LLC, 372 F. Supp. 2d 1165, 1173 (D. Neb. 2005) (finding " 'A claim 'alleging retaliation by an employer against an employee for filing' a discrimination charge is one type of claim we have recognized as 'reasonably related' to the underlying discrimination charge.' ") (citations omitted). Based on a liberal reading, the court finds plaintiff's retaliation claim relating to her termination is "reasonably related" to her retaliation claim relating to the proposed involuntary transfer listed in her administrative charge. District's objection on this basis is overruled.

      **b.**     **Protected activity**

The magistrate judge concluded Ms. Rosane engaged in protected activity "by filing her internal grievance and by filing her charge of discrimination with

9

the SDDHR." (Docket 69 at p. 34). The "filing of the internal discrimination complaint qualifies as protected conduct" as does the filing of the charge of discrimination with the SDDHR. Pye, 641 F.3d at 1020, 42 U.S.C. § 2000e-3.

District contends Ms. Rosane claimed the filing of the internal grievance was the protected activity, not the filing of her discrimination charge with the SDDHR. (Docket 70 at p. 6). "Ms. Rosane alleged that she was being discriminated against in the workplace in her grievance of September 18, 2009." (Docket 69 at p. 34). Ms. Rosane did not specifically refer to race; however, she was alleging Ms. Conroy and Mr. Plenty Wounds were the ones discriminating against her. Ms. Rosane also alleged Ms. Conroy and Mr. Plenty Wounds were using Lakota as a tool of exclusion.

District argues "because race was not indicated in Plaintiff's grievance, nor was it mentioned in the meetings with District prior to or subsequent to her grievance, any action taken in response to her grievance cannot be actionable under Title VII." (Docket 70 at pp. 7-8). Although race was not specifically mentioned, the record is clear that District understood Ms. Rosane's allegations as racial. In response to Ms. Rosane's grievance, District sent Ms. Rosane a letter which referenced District's policy prohibiting unlawful discrimination. (Docket 56-22). In addition, the letter also concluded the use of Lakota in Ms. Rosane's work environment was not being deployed in an attempt to harass, bully, or discriminate against Ms. Rosane. Id.

Ms. Rosane filed a charge of discrimination with SDDHR which explicitly referenced race discrimination. This constitutes a protected activity. 42 U.S.C. § 2000e-3. Based on this record, the court concludes Ms. Rosane engaged in a protected activity. District's objection on this basis is overruled.

      **c.**    **Adverse employment action**

The magistrate judge concluded whether Ms. Rosane "felt forced to resign or was terminated," she suffered an adverse employment action. (Docket 69 at p. 35). In the Eighth Circuit, "[a]dverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." Williams v. City of Kansas City, 223 F.3d 749, 753 (8th Cir. 2000). District argues Ms. Rosane's complaint alleged she was forced to resign, not that she was terminated. Since the filing of the complaint, the discovery showed Ms. Rosane was actually terminated by the District. Viewing the facts in the light most favorable to Ms. Rosane, the court concludes Ms. Rosane suffered an adverse employment action regardless of whether she was forced to resign or District terminated her position. District's objection is overruled on this basis.

      **d.**    **Causal connection between the protected activity and the adverse employment action**

District argues the time period between Ms. Rosane filing the internal grievance (September 18, 2009) and Ms. Rosane's termination (April 2010) precludes a finding her termination was causally related to filing her grievance.

(Docket 57 at pp. 26). "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." Tyler v. Univ. of Arkansas Bd. Of Trustees, 628 F.3d 980, 986 (8th Cir. 2011).

The magistrate judge noted the relevant dates for consideration when determining that a causal link existed between the protected conduct and the adverse employment action. (Docket 69 at p. 37). First, Ms. Rosane filed her internal grievance on September 18, 2009. (Docket 56-17). Less than a week later, the subject of Ms. Rosane's involuntary transfer to another school was raised. (Docket 58 at ¶ 26). In addition to the proposed involuntary transfer, the SDDHR issued its finding of no probable cause on February 11, 2010. (Docket 56-25). Plaintiff appealed the decision of the SDDHR to the EEOC. The "School District fired Ms. Rosane just a matter of weeks after" she filed her appeal to the EEOC. (Docket 69 at p. 37).

District asserts the magistrate judge erred in finding the relevant time line was determined by SDDHR issuing its finding of no probable cause in February 2010. (Docket 70 at p. 9). District misconstrues the magistrate judge's report. The decision issued by SDDHR was not the protected conduct, but rather the appeal to the EEOC.

District asserts the magistrate judge erred in considering whether there were any concerns about Ms. Rosane's performance prior to filing her grievance because "District has not asserted that Plaintiff's performance issues played a part in its decision related to Plaintiff's termination."  (Docket 70 at p. 11).  However, the magistrate judge correctly pointed out that "[i]n addition to temporal proximity between protected activity and adverse employment actions, a plaintiff can use alternate circumstantial evidence to prove causation--generally more than timing is required."  (Docket 69 at pp. 37-38) (citing Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 762 (8th Cir. 2004).  "A causal link between an employee's conduct and her termination may be shown if the retaliation occurred soon after the employee's protected conduct or if the employer's concerns about the employee's conduct arose only after the employee engaged in protected conduct."  Johnson v. Shinseki, No. 4:08CV1872, 2011 WL 3703277 (E.D. Mo. 2011).  The magistrate judge pointed out "Ms. Rosane was [not] the subject of any disciplinary action prior to filing her grievance."  (Docket 69 at p. 39).  The court finds the magistrate judge did not err in considering whether Ms. Rosane had been subject to any disciplinary action prior to filing her grievance as this analysis is an alternate way of proving causation.

After considering the time line relevant to Ms. Rosane's action, the magistrate judge concluded there was an issue of material fact regarding the

13

reason Ms. Rosane was terminated. Ms. Rosane contends the reason for her termination was pretextual. Ms. Rosane alleges she called the School District on January 19, 2010, and March 25, 2010, to inquire about the status of the District's investigation of her complaint but received no response. (Docket 62 at p. 26). Ms. Rosane began working at Gordon Hospital on January 22, 2010. (Docket 56-4). District argues Ms. Rosane was terminated because District was "concerned about the implication that [Ms. Rosane] received benefits for over thee (3) months at a cost to the School District when [she was], in fact, able and willing to work and did work at other facilities." (Docket 56-29).

> Based on this record, the magistrate judge determined:
>
> [A] jury could arrive at two rationally possible conclusions regarding causation.
>
> A reasonable jury could conclude that Ms. Rosane contacted the School District on January 19, 2010, as one last effort to understand the status of her employment and the pending investigation and when she received no response, she sought to mitigate her damages by accepting employment at Gordon Hospital. A reasonable jury could alternatively conclude that Ms. Rosane knew she was still employed by the School District and that she misrepresented her health situation in order to receive benefits from the School District while working for Gordon Hospital.

(Docket 69 at p. 40). Based on these possible conclusions, the magistrate judge determined a genuine issue of material fact existed regarding District's motives for terminating Ms. Rosane.

As noted by the magistrate judge, "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

14

facts are jury functions, not those of a judge." Guimaraes v. SuperValu, Inc., 674 F.3d 962, 972 (8th Cir. 2012) (internal citations omitted).  It is for the jury to decide whether any inferences can be drawn from District's failure to respond to Ms. Rosane's attempts to contact District regarding her grievance. See Minnis v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., 531 F.2d 850, 854 (8th Cir. 1975) ("Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment.").  The court finds a genuine issue of material fact exists regarding District's motive for terminating Ms. Rosane.  District's objection on this basis is overruled.

This same dispute also implicates the final stage of the pretext inquiry under the McDonnell Douglas burden-shifting analysis.  Because the identical material fact issue exists in relation to the *prima facie* case, the court need not consider the final state of the burden-shifting analysis.

### 2.     Affirmative Defense of Sovereign Immunity

District asserts the magistrate judge erred in concluding District was not protected by statutory sovereign immunity.  (Docket 70 at p. 16).  The Eighth Circuit held the "plain language" of Title VII "demonstrates Congress' intent to abrogate Eleventh Amendment immunity of the states in this area." Okruhlik v. Univ. of Arkansa ex rel. May, 255 F.3d 615, 623 (8th Cir. 2001).  Recognizing

this limitation, District asserts it is entitled to state statutory sovereign immunity provided for under South Dakota law. (Docket 57 at p. 27). SDCL § 21-32A-3 states:

> Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21-32A-1, any public entity is immune from liability for damages whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

District contends that because insurance coverage does not exist for this action, it has not waived sovereign immunity and is entitled to assert sovereign immunity as an affirmative defense. (Docket 57 at p. 29). District, in its motion for summary judgment, cites to several cases where the Eighth Circuit and district courts have applied state law to determine whether summary judgment is appropriate on the basis of sovereign immunity. Id. at p. 27. However, as noted by plaintiff, each of those cases deal with the application of state statutory sovereign immunity to state law claims brought in federal court. In this case, there is no state law claim. District is asking this court to apply state statutory sovereign immunity to a federal claim.

"Municipal defenses–including an assertion of sovereign immunity–to a federal right of action are, of course, controlled by federal law." Owen v. City of Independence, Missouri, 445 U.S. 622, 648 n. 30 (1980). The United States Supreme Court discussed the application of state laws that immunize government conduct otherwise subject to suit in relation to actions brought

16

under § 1983.  Felder v. Casey, 487 U.S. 131, 139 (1988).  The Court noted that "[a]ny assessment of the applicability of a state law to federal civil rights litigation, therefore, must be made in light of the purpose and nature of the federal right." Id.  The Court "held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy. . . ." Id.

Analogizing § 1983 and Title VII actions, the magistrate judge concluded that "[a]llowing South Dakota law to preempt Title VII provisions which subject state employers to employment discrimination lawsuits would thwart the underlying purpose of Title VII." (Docket 69 at p. 43).  Without explanation or citation to any authority, District asserts the principle established by the Supreme Court in § 1983 actions regarding sovereign immunity is not analogous to Title VII actions.  This court disagrees.  Under District's reasoning, no governmental agency in South Dakota would ever be subject to a Title VII action as long as it was without insurance coverage.  This would thwart the purposes of Title VII in allowing persons to be made "whole for injuries suffered on account of unlawful employment discrimination." Franks v. Bowman Transp. Co., 424 U.S. 747, 763 (1976).  District's objection is overruled.

## CONCLUSION

The court carefully considered the record in this case *de novo*. The court finds the report and recommendation to be an accurate and thorough recitation of the facts and applicable case law. The court further finds Judge Duffy's legal analysis to be well-reasoned and District's objections to be unpersuasive. Good cause appearing, it is hereby

ORDERED that defendant's objections to the report and recommendation (Docket 70) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 69) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 56) is granted as it relates to plaintiff's hostile work environment claim and denied as it relates to plaintiff's retaliation claim and defendant's claim of sovereign immunity.

Dated June 14, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE